UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on April 29, 2005

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| | : | |
| v. | : | Grand Jury Original |
| | : | |
| | : | VIOLATIONS: |
| | : | |
| RENE IBANEZ, JR., | : | 18 U.S.C. § 1344 (Bank Fraud); |
| | : | 18 U.S.C. § 1341 (Mail Fraud); |
| | : | 18 U.S.C. § 2 (Causing an Act to be |
| Defendant. | : | Done); 18 U.S.C. § 982(a)(2)(A) |
| | : | (Criminal Forfeiture). |

**I N D I C T M E N T**

The Grand Jury charges that:

**COUNT ONE**

**(BANK FRAUD)**

**Introduction**

At all times material to this indictment:

    1. The defendant RENE IBANEZ, JR.'s mother, Mrs. Hilda Ibanez, lived at 1723 Irving Street, N.W., Washington, D.C. Mrs. Ibanez and her husband purchased their home in 1963. From 1975 until the beginning of the events outlined in this indictment, the house was free and clear of any debt or liens.

    2. Mrs. Ibanez was a widow, in that her husband passed away in 1996.

    3. Mrs. Ibanez passed away on June 12, 2005.

    4. Chase Manhattan Mortgage Company was a subsidiary of JP Morgan Chase, a financial institution with deposits insured by Federal Deposit Insurance Corporation.

5. Chase Manhattan Mortgage Company ("Chase") was in the business, among other things, of providing home equity lines of credit on residential real estate. A home equity line of credit was a loan with a house serving as "collateral," that is, property pledged to satisfy the loan, if needed.

6. Trustworthy Mortgage Corporation ("Trustworthy Mortgage") was a correspondent broker with Chase in that Trustworthy Mortgage would originate, or initiate, loans on behalf of Chase, so that Chase could lend money to individuals, such as collateralized home equity lines of credit as referenced above.

7. In order to complete or "close" a home equity line of credit with real estate serving as collateral, the owner of the house was required to sign documents at a process known as "settlement." Typically, a settlement occurs at a title company.

8. If the owner were not physically capable of being present at the settlement, then he or she could sign a document known as a "Power of Attorney," which authorized another person to sign for the owner to obtain loans, sell property, or enter into contracts. The owner would be required to be personally present before a Notary Public who would witness the owner signing the Power of Attorney and would certify that the owner signing the Power of Attorney was personally known or identified to the Notary Public.

9. If the a home equity line of credit were not repaid, then Chase would initiate legal proceedings which would foreclose on the property and take the property away from the owner in order to repay the loan.

**The Scheme**

10. From in or about June 2004, until in or about October 2004, within the District of Columbia and elsewhere, the defendant RENE IBANEZ, JR. devised and intended to devise a scheme to defraud a financial institution, that is, Chase, and to obtain money owned by and under the custody and control of Chase by means of false and fraudulent pretenses, representations, and promises.

11. It was part of the scheme to defraud that at the end of June 2004, the defendant RENE IBANEZ, JR., without his mother's permission, applied for a $65,000 line of credit in his mother's name and using the house, 1723 Irving Street, N.W., as collateral.

12. It was further part of the scheme to defraud that in or about June 2004, the defendant RENE IBANEZ, JR. completed a home equity line of credit application with Trustworthy Mortgage, a correspondent broker with Chase. The defendant IBANEZ provided information, including false information, about his mother in order to obtain the loan. In order to conceal loan application from his mother, IBANEZ listed his own cellular telephone number in the place of his mother's home telephone number on the application.

13. It was further part of the scheme to defraud that in or about June 2004, in order to complete the loan application process, the defendant RENE IBANEZ, JR. presented two loan documents to Trustworthy Mortgage, each containing the forged signature of Mrs. Hilda Ibanez.

14. It was further part of the scheme to defraud that on or about July 14, 2004, the defendant RENE IBANEZ, JR. presented to a Notary Public a "Power of Attorney" falsely purporting to give him permission to act as his mother, Mrs. Hilda Ibanez. This Power of Attorney contained the forged signature of Mrs. Hilda Ibanez. The defendant IBANEZ asked the

Notary Public to notarize Mrs. Ibanez's signature and to state falsely that Mrs. Hilda Ibanez "personally appeared before" the Notary and signed the Power of Attorney in the Notary Public's presence.

15. It was further part of the scheme to defraud that on or about July 19, 2004, the defendant RENE IBANEZ, JR. presented the forged and falsely notarized Power of Attorney to the title agent so that the settlement of the home equity line of credit could proceed and so that the defendant IBANEZ would receive the loan money.

16. It was further part of the scheme to defraud that in or about July 2004, the defendant RENE IBANEZ, JR. requested $35,000 of the loan money to be transferred into his mother's Bank of America checking account via a wire transfer.

17. It was further part of the scheme to defraud that in or about July 2004, the defendant RENE IBANEZ, JR. requested that the remaining (approximate) $30,000 in loan money be made available via a home equity credit line account at Chase. Toward that end, the defendant IBANEZ requested that Chase send a book of checks to his mother's address, 1723 Irving Street, N.W.; in response to this request, on or about July 26, 2004, Chase, through its check vendor, sent the checks to Mrs. Hilda Ibanez's house in the District of Columbia, through the U.S. Postal Service.

18. It was further part of the scheme to defraud that in or about July or August 2004, the defendant RENE IBANEZ, JR., intercepted the Chase checks at his mother's house. Thereafter, the defendant IBANEZ wrote checks on the home equity line of credit in the total amount of approximately $20,000 and forged his mother's name on the checks without her knowledge or permission.

19. It was further part of the scheme to defraud that in or about September 2004, when the first payment to repay the line of credit was due, the defendant RENE IBANEZ, JR. failed to pay the minimum of the interest then currently due and owing on the loan, as required by the home equity line of credit agreement.

**(Bank Fraud and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1344 and 2).**

### COUNT TWO

### (MAIL FRAUD)

1. From in or about June 2004, until in or about October 2004, within the District of Columbia and elsewhere, the defendant RENE IBANEZ, JR. devised and intended to devise a scheme to defraud Chase by applying for a home equity line of credit using false and forged documents, such as the forged Power of Attorney, as is more fully described below.

2. Paragraphs 1 through 9 and 11 through 19 of Count One of this indictment are hereby realleged, and contain the description of the above-mentioned scheme.

3. On or about July 26, 2004, within the District of Columbia and elsewhere, the defendant RENE IBANEZ, JR. for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by the United States Postal Service, to the defendant IBANEZ's mother's house at 1723 Irving Street, N.W., Washington, D.C. 20010, mail matter, that is, checks from Chase for the home equity line of credit account.

**(Mail Fraud, Causing an Act to Be Done, in violation of Title 18, United States Code, Sections 1341 and 2).**

## FORFEITURE ALLEGATION

1. The violations alleged in Counts One and Two of this indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A).

2. As a result of the offenses alleged in Counts One and Two of this indictment, the defendant RENE IBANEZ, JR. shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the bank fraud, in violation of Title 18, United States Code, Section 1344; and mail fraud, in violation of Title 18, United States Code, Section 1341; including, but not limited to:

> Vehicle
>
> One 2000 Jeep Cherokee Automobile, VIN 1J4GW58N2YC241914, (seized on August 11, 2005 pursuant to Seizure Warrant, Case No. 05-0447M-01) which constitutes property derived from proceeds of bank fraud, in violation of 18 U.S.C. § 1344, and mail fraud, in violation of 18 U.S.C. § 1341, Fed.R.Crim.P. 32.2(b)(1).   .
>
> Money Judgment:
>
> $40,827.00 which represents the sum of money equal to the total amount of property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the bank fraud, in violation of 18 U.S.C. § 1344, and mail fraud, in violation of 18 U.S.C. § 1341,  Fed.R.Crim.P. 32.2(b)(1).

By virtue of the commission of the felony offenses charged in Counts One and Two of this indictment, any and all interest that the defendant has in the property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the

United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3. If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A), as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Sections 982(a)(2)(A); Title 18, United States Code, Section 982(b)(1))**

A TRUE BILL

FOREPERSON.

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA