UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No.: 06-0012(RMU) |
| : | |
| RENE IBANEZ, JR, : | |
| : | |
| Defendant. : | |
| _____ : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing regarding the defendant, Rene Ibanez, Jr..

I. BACKGROUND

In June 2004, the defendant, using the identity of his mother, Hilda Ibanez, applied for a home equity line of credit ("line of credit") with his mother's home located at 1723 Irving Street, N.W., Washington, D.C. as collateral. The defendant submitted an application to Trustworthy Mortgage, a correspondent broker with Chase Manhattan Mortgage Company. The defendant told Trustworthy Mortgage that his mother was requesting the loan, when in truth, she did not authorize the application for the $65,000 line of credit with her home as collateral. To conceal the loan application from his mother, the defendant provided Trustworthy with his own cellular telephone number in place of his mother's home telephone number and submitted two forms, one form acknowledging the application and authorizing the release of information and a second form approving payment of a fee to Trustworthy Mortgage containing his mother's forged signature.

Chase Manhattan Mortgage Company approved the line of credit and set a closing date on the loan for July 19, 2004. Because the borrower is typically required to attend the settlement, the defendant created a fraudulent Power of Attorney, without his mother's knowledge or consent,

authorizing the defendant, in his mother's absence, to obtain the line of credit for $65,000 using Mrs. Ibanez's home as collateral. The defendant forged his mother's signature on the Power of Attorney and then presented the forged document to a notary public, who notarized Mrs. Ibanez's signature as genuine, without having witnessed the signature. Then in or about July 2004, the defendant presented the forged and notarized Power of Attorney. With the forged Power of Attorney, the defendant signed his mother's name to the closing documents.

Chase Manhattan Mortgage Company funded the line of credit in two ways. First, Chase Manhattan Mortgage Company transferred via a wire approximately $35,000 into Mrs. Ibanez's Bank of America checking account. Second, Chase Manhattan Mortgage Company deposited the remainder of the line of credit amount into an account at Chase Manhattan Bank. Chase Manhattan Bank, through its check vendor, mailed checks for the line of credit account via the U.S. Postal Service to Mrs. Ibanez's home.

With respect to the wire transfer, the defendant falsely told his mother that the source of the funds was money from his retirement fund. Accepting this representation, Mrs. Ibanez gave two checks to her son, who gave the checks to his then girlfriend. On about July 28, 2004, the girlfriend deposited one of these checks (the one worth $16,552) into her credit union checking account in Washington, D.C.[1] On August 10, 2004, the defendant asked his then-girlfriend to use $9,400 of the line of credit money to purchase a certified check. Two days later the defendant spent the $9,400 certified check to purchase a 2000 Jeep Cherokee, which he titled in his own name.

The defendant collected the checks for the Chase Manhattan Bank account from the mail delivered to his mother's address. The defendant then forged his mother's name as the authorizing

---

[1] The girlfriend returned the second check to the defendant's sister some time later.

signature on various Chase Manhattan Bank checks.

## II. <u>INVESTIGATION</u>

On July 14, 2005, a Postal Inspector with the U.S. Postal Inspection Service interviewed the defendant. The defendant told the Postal Inspector that he had asked his mother if he could apply for a line of credit using her home located at 1723 Irving Street, NW, Washington, D.C. as collateral. The defendant said that his mother initially agreed; however, a few days after he applied for the line of credit, his mother changed her mind and stated that she no longer would allow him to take out a line of credit using her home as collateral. The defendant admitted that he continued with the loan process even though he knew that it was wrong. The defendant initially told the inspector that he created a Power of Attorney in the amount of $65,000 and had his mother sign it; however, the defendant later changed his story and admitted that he had forged his mother's signature on the document. The defendant also admitted that he took the forged Power of Attorney to the 4800 Hampden Lane, Bethesda, Maryland, branch of the M&T Bank where he was able to have the document notarized without his mother's presence. The defendant admitted to the agent that he opened the package containing the checks to the account at Chase Manhattan Bank and that he wrote twelve checks on the Chase account totaling $19,775. The defendant also told the agent that his mother wrote a few checks for him for child support, back taxes and parking tickets. The defendant admitted that he knew it was wrong to open the line of credit without his mother's consent.

In August 2005, Postal Inspectors executed a court-authorized seizure warrant. The warrant authorized the seizure of a 2000 Jeep Cherokee purchased by the defendant with proceeds from the home equity line of credit that the defendant fraudulently obtained in his mother's name.

The amount of restitution which should be ordered in this matter is $27,862, which is the $38,687 agreed upon by the parties in the plea agreement, less $10,825, which was the value of the 2000 Jeep Cherokee at the time of the seizure. The restitution is payable to JP Morgan Chase Bank, NA. Such amount is consistent with the restitution agreement set out in the plea agreement dated February 23, 2006.

III. SENTENCING ANALYSIS

In the plea agreement, the defendant and the government agreed that the offense level based upon the stipulated facts totaled 13. See U.S.S.G. § 2B1.1 (base offense level 7 increased by 6 due to loss of more than $30,000 but less than $70,000). The parties also agreed that defendant was entitled to a two level reduction for acceptance of responsibility, reducing his offense level to 11. Based upon a criminal history category I, defendant faces a range of 8 to 14 months in Zone C.

IV. CONCLUSION

In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense. . . and to afford adequate deterrence to criminal conduct."

18 U.S.C. § 3553(a)(2)(A). The government respectfully informs the Court that it would not oppose a sentence toward the low-end of the guideline range.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney
        for the District of Columbia

By: _____
        VIRGINIA CHEATHAM
        Assistant United States Attorney
        D.C. Bar # 411980
        Fraud and Public Corruption Section
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 514-9732